JUDGE KOEITL

RAYMOND E. GAZER (RG3706)
Getz and Braverman, P.C.
172 East 161st Street
Bronx, New York 10451
Telephone: (718)993-3000
Fax: 402-5183
*Attorneys for Plaintiff*

**14 CV 8979**

RECEIVED
NOV 12 2014
U.S.D.C. S.D. N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

BISHME AYERS,

                                Plaintiff,

         -against-

THE CITY OF NEW YORK, JOHN DOE NEW YORK
CITY CORRECTION OFFICER NUMBER ONE, JOHN
DOE NEW YORK CITY CORRECTION OFFICER
NUMBER TWO, JOHN DOE NEW YORK CITY
CORRECTION OFFICER NUMBER THREE, all "JOHN
DOE" names being fictitious and representing
New York City Correction Officers whose actual names
remain unknown to plaintiff,

                                Defendants.
------------------------------------------------------------------------X

PLAINTIFF DEMANDS A
TRIAL BY JURY

Civil Action
No._____
COMPLAINT FOR
DAMAGES-
Assault; Battery;42 U.S.C. §§
1981, 1983, 1985

## I.    PRELIMINARY STATEMENT

1.    This is an action brought under 42 U.S.C. §§ 1981, 1983 and 1985 and raising

supplemental state-law claims sounding in intentional infliction of emotional distress, assault

and battery regarding the actions of New York City Correction's Officers while plaintiff was in

their custody at Jacobi Medical Center.

2.    Due to the defendants' actions and inactions, plaintiff was caused to suffer severe

and debilitating physical, emotional, and psychological injuries, and was deprived of rights

afforded to him by the constitution and laws of both the United States and the State of New

York.

3.     Plaintiff now seeks damages for the substantial pain and suffering, deprivation of his civil rights, emotional distress, and humiliation.

## II.     JURISDICTION AND VENUE

4.     This court has jurisdiction over the subject matter of this complaint under 42 U.S.C. §§ 1981, 1983, 1985, and 28 U.S.C. §§ 1331, 1334(a)(2), 1334(a)(3), 1334(a)(4), and 1367(a).

5.     Venue is laid, pursuant to 28 U.S.C. § 1391(b)(2), in the Southern District of New York where a substantial part of the acts and omissions giving rise to these causes of action occurred, to wit, in the County of Bronx.

## III.     PARTIES

6.     Plaintiff BISHME AYERS, twenty-five years of age, was at all times relevant to this complaint a citizen of the United States and a resident of the City of Reading in the State of Pennsylvania.

7.     Defendant CITY OF NEW YORK ("CITY") is a municipal corporation, and political subdivision, of the State of New York, organized and existing through the Constitution and laws of the State of New York.

8.     The New York City Department of Corrections was established and exists through the authority of Chapter 25 of the New York City Charter, and pursuant to said Charter and laws enacted thereunder, defendant CITY owns, operates, manages, directs, and controls the New York City Department of Corrections, which also employs JOHN DOE NEW YORK CITY

-2-

CORRECTION OFFICERS NUMBERS ONE, TWO and THREE.

9.      JOHN DOE NEW YORK CITY CORRECTION OFFICER NUMBER ONE

("JOHN DOE ONE") is and was at all times relevant to this Complaint an employee of

defendant CITY, duly appointed and acting as a Correction Officer with the aforementioned

New York City Department of Corrections.  He is sued in his individual capacity.

10.     JOHN DOE NEW YORK CITY CORRECTION OFFICER NUMBER TWO

("JOHN DOE TWO") is and was at all times relevant to this Complaint an employee of

defendant CITY, duly appointed and acting as a Correction Officer with the aforementioned

New York City Department of Corrections.  He is sued in his individual capacity.

11.     JOHN DOE NEW YORK CITY CORRECTION OFFICER NUMBER THREE

("JOHN DOE THREE") is and was at all times relevant to this Complaint an employee of

defendant CITY, duly appointed and acting as a Correction Officer with the aforementioned

New York City Department of Corrections.  He is sued in his individual capacity.

12.     At all times relevant to this Complaint, all defendants acted in concert and

conspired together through both their acts and omissions and are jointly and severally liable for

the harms caused to plaintiff.

13.     At all times relevant to this Complaint, all defendants were acting under the color

of state law, to wit, the statutes, ordinances, regulations, policies, customs, and usages

of defendant CITY and of the State of New York.

### IV.   NOTICE OF CLAIM

14.     On August 4, 2014, within ninety days following the occurrence of the incidents complained of in this Complaint, plaintiff filed a written Notice of Claim with defendant CITY pursuant to General Municipal Law § 50-e.  Thirty days since the filing thereof have elapsed without adjustment or payment of plaintiff's claim.

### V.   FACTUAL ALLEGATIONS

15.     On and around July 1st, 2014, BISHME AYERS, previously a resident of, and having been born in, the Bronx, was visiting relatives in Bronx County, New York.  At the time, he was gainfully employed as a maintenance worker near his home in Reading, Pennsylvania. Plaintiff has suffers from a seizure disorder and asthma.

16.     While in the Bronx, on July 1st, 2014, plaintiff was involved in a domestic altercation with a former girlfriend and her unidentified, male acquaintance.  As a result of that incident, he sustained a knife wound to his left thigh and went to Montefiore Hospital at 111 East 210th Street, Bronx, New York, for treatment.  While being treated therein, uniformed members of the New York City Police Department arrived and informed plaintiff that he was going to be placed under arrest for charges stemming from the domestic altercation which had transpired earlier.  He received treatment, including stitching to the stab wound, while in the custody of the New York City Police Department and eventually was transported to the Bronx County Central Booking facility.

17.     On July 2nd, 2014, Plaintiff was arraigned in the New York City Criminal Court,

Bronx County, and charged with Assault in the Third Degree, a misdemeanor, in violation of New York Penal Law § 120.00(1) and other related non-felony charges. Bail was set at $500 dollars insurance company bond or, in the alternative, $250 cash, neither of which plaintiff was able to post.

18.     Custody of Plaintiff was then turned over to the New York City Department of Corrections, and plaintiff was transferred to the Vernon C. Bain Correctional Center ("VCBC"), colloquially known as "The Boat" in Hunts Point, in the Bronx, to await further proceedings with respect to his criminal case. The The New York City Department of Corrections operates the Vernon C. Bain Correctional Center.

19.     On July 2nd, 2014, plaintiff, while still in the custody of the New York City Department of Corrections, began to suffer from seizures. He was transported to Lincoln Medical Center located at 234 East 149th Street in the Bronx, where he received medications in an attempt to control the seizures. He was then transported back to VCBC. Thereafter, on July 3rd, 2014, while still in the custody of the New York City Department of Corrections, plaintiff again began to have seizures and was transported to Jacobi Medical Center at 1400 Pelham Parkway South in the Bronx.

20.     At Jacobi, plaintiff was admitted to Room 5D, a private room with only one occupied bed. At all times, while at Jacobi Medical Center, including in transport thereto and therefrom, plaintiff was in the custody of the New York City Department of Corrections and while at the hospital, plaintiff's left hand was cuffed and his right leg was shackled to the bed. While admitted to Jacobi, at least one, but usually two, uniformed officers from the New York

City Department of Corrections were physically present either inside plaintiff's room or immediately outside the door thereto. These officers worked three different shifts throughout the day.

21.     On and in between July 3rd and July 4th, 2014, sometime during the 11 p.m. (July 3rd) to 7 a.m. (July 4th) shift, JOHN DOE ONE and another correction officer were both present and guarding plaintiff. JOHN DOE ONE, who appeared intoxicated, without provocation, grabbed plaintiff's left arm and pushed the handcuff tighter around plaintiff's wrist causing plaintiff to sustain substantial pain and discomfort. Plaintiff complained to both JOHN DOE ONE and the other officer. Plaintiff later reported the incident to the medical staff who examined his wrist.

22.     The next day, on July 4th at around 11 p.m. JOHN DOE ONE was again present in plaintiff's room, this time with JOHN DOE TWO. While both JOHN DOE ONE and TWO were in the room, JOHN DOE ONE stated, in sum and substance, "Don't think we don't know about you, you're a rat and you like telling on my officers."

23.     Sometime approximately 45 minutes to an hour thereafter, while JOHN DOE TWO was outside the room, JOHN DOE ONE again came into plaintiff's room and shut off his television. A disagreement about the propriety of turning off the television ensued, and plaintiff rang for the nurse. The nurse came in and turned back on the television.

24.     Immediately upon the nurse's exit from plaintiff's room, but now in the early hours of July 5th, 2014, JOHN DOE ONE returned to the room, and, with JOHN DOE TWO again immediately outside the room, closed the curtain around plaintiff's bed and immediately

began punching him about the face and body repeatedly. Plaintiff began to scream and attempted to deflect the punches with his free hand. These actions caused plaintiff substantial pain, discomfort, and caused the wound on his leg to bleed.

25.    JOHN DOE ONE grabbed plaintiff's right hand and used a rope to tie it to the left bed rail, where plaintiff's left hand was already cuffed, causing plaintiff to turn onto his side. JOHN DOE ONE then took out his pistol and placed the barrel on the top of plaintiff's bottom lip, and stated, in sum and substance, "If I kill you and lose my pension, I have enough money in a safe. If I get fired or anything, I'll be good for the rest of my life." JOHN DOE ONE re-holstered his weapon.

26.    JOHN DOE ONE then, without provocation and while JOHN DOE TWO was directly outside the room, repeatedly struck plaintiff about the legs, including in the area where plaintiff had been previously injured, with a metal baton. Thereafter, to plaintiff's horror, JOHN DOE ONE inserted said baton into plaintiff's rectum and proceeded to forcibly push it deeper inside plaintiff's rectal area.   Although the incident caused a commotion and plaintiff screamed loudly, JOHN DOE TWO, still standing immediately outside the hospital room,  did nothing to intervene and stop the brutal assault and battery. These actions caused plaintiff to sustain several anal tears and lesions, to suffer substantial pain, discomfort, humiliation, and embarrassment, and necessitated the wound on plaintiff's leg to be re-stitched.

27.    Plaintiff reported the incident to the medical staff who conducted an examination and, on July 7, 2007, performed a comprehensive sexual assault assessment. Further, while plaintiff was still admitted to the hospital staff, officials from the New York City Health and

Hospital Police, and the New York City Police Department's Internal Affairs Bureau questioned

plaintiff concerning the incident.  Plaintiff had no further interaction with either JOHN DOE ONE

or TWO.

28.     On July 6th, 2014, sometime during the 3 p.m. to 11 p.m. shift, while plaintiff was

still in hospital room 5D, JOHN DOE THREE entered plaintiff's room and stated, in sum and

substance, "You like ratting on my officers.  You like snitching on my officers."

29.     On July 7th 2014, JOHN DOE THREE again entered plaintiff's hospital room

during the 3 p.m. to 11 p.m. shift and stated, in sum and substance, "You like snitching on Deputy

Perez." JOHN DOE THREE then proceeded to punch plaintiff in the mouth causing substantial

pain, discomfort, and swelling.

30.     By way of background, while incarcerated on Rikers Island in 2008, plaintiff

made several complaints concerning allegations of excessive force by a "Perez" and other

correction officers.  Based upon information and belief, Perez refers to Eliseo Perez, Jr., who was

a top ranking corrections official at the George R. Vierno Correctional Center,

the same jail on Rikers Island where plaintiff had been incarcerated.  Perez is currently under

indictment in Bronx County for an alleged assault on an inmate at Rikers Island. Those

allegations are unrelated to this action.  Further, plaintiff previously brought suit in New York

State Supreme Court against defendant CITY and several named correction officers under Bronx

County Index Number 307426/2011.  That suit, which has since been settled, concerned the use

of force at the George R. Vierno Correctional Center and did not involve, so far as plaintiff can

now determine, either JOHN DOE ONE, TWO, or THREE.

31.    On July 9th, 2014, plaintiff was discharged from the hospital into the sole custody of the New York City Department of Corrections.  Plaintiff was brought back to VCBC. Sometime thereafter, he was transported to Bellevue Hospital Center at 462 First Avenue in Manhattan for continued treatment of his seizures.  He was discharged and brought to court in the Bronx, where, on July 14, 2014, he was released from Department of Correction's custody.

32.    On October 14, 2014, the New York City Criminal Court dismissed all charges against plaintiff stemming from the domestic altercation.

33.    As a direct and proximate result of the acts and omissions of defendants, plaintiff sustained severe and permanent injuries  including, but not limited to, the following:

      a.     bruising and swelling about the face and body

      b.     lesions and tearing to the anal/rectal area

      c.     re-injuring and aggravation of plaintiff's prior leg wound which required re-suturing

      d.     substantial pain

      e.     discomfort

      f.     fear

      g.     embarrassment

      h.     humiliation

      i.     emotional distress and severe emotional distress

      j.     mental anguish

34.    The actions and omissions of defendants violated the following clearly established

and well settled federal rights of plaintiff's under the Fourth and Fourteenth Amendments to the United States Constitution:

     a.      freedom from unreasonable seizure of person

     b.      freedom from the use of excessive, unreasonable, and unjustified force against a person

**COUNT ONE (Federal cause of action pursuant to 42 U.S.C. §§ 1981, 1983, 1985 against the individual defendants for violation of plaintiff's Fourth and Fourteenth Amendment rights)**

35.     Paragraphs 1 through 34(b) are each repeated, realleged, and reiterated as if fully set forth herein and are incorporated by reference.

36.     The actions of defendants JOHN DOE ONE, JOHN DOE TWO, and JOHN DOE THREE violated plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from the use of excessive and unreasonable force, unreasonable seizure, and the application of force, applied in a bad faith, maliciously, and sadistically for the sole purpose of causing harm.

37.     As a direct and proximate result thereof, plaintiff claims damages for the injuries set forth above.

**COUNT TWO (Federal cause of action pursuant to 42 U.S.C. §§ 1981, 1983, 1985, and <u>Monell v. Dept. Of Soc. Serv.</u>, 436 U.S. 658 (1978) against the municipal defendant)**

38.     Paragraphs 1 through 37 are each repeated, realleged, and reiterated as if fully set forth herein and are incorporated by reference.

39.      Defendant CITY knew or should have known its employees', agents', or servants' propensity to engage in illegal and wrongful acts detailed above.

40.      Prior to July 4th, 2014, Defendant CITY developed and maintained policies and/or customs exhibiting deliberate indifference to the constitutional rights of persons incarcerated in the custody of the New York City Department of Corrections, which policies and/or customs caused the violation of plaintiff's rights.

41.      Based upon information and belief, it was the policy and/or custom of defendant CITY to improperly or inadequately investigate complaints of people in the custody of the Department of Corrections, and acts of abuse, excessive force, and misconduct were instead tolerated, encouraged, and ratified by defendant CITY, including incidents in the past where officials from the Department of Corrections beat inmates as punishment for rule violations or infractions; forcibly extracted inmates from cells without just cause; detained inmates in conditions which were in violation of state and federal law; retaliated against inmates for exercising their right to file grievances and complaints about officers and jail conditions; secreted inmates to places where no cameras or other surveillance existed for the purpose of perpetuating acts of brutality and torture without detection; and covered up, concealed, and hid such instances of the use of force and otherwise obstructed and manipulated any investigations thereto.

42.      These customs and policies regarding the use of such force were, indeed, pervasive and well known around the Department of Corrections and with defendant CITY.  On July 14, 2014, the New York Times reported concerning their investigation into the extent of the use of excessive force within the Department of Corrections (*See* New York Times article annexed

hereto as Exhibit "A").  The article detailed a New York City Department of Health and Mental

Hygiene report which found that, from January 1st, 2013 to November 30th, 2014, 129 inmates at

Rikers Island suffered serious injuries in altercations with New York City Department of

Correction staff.  The report defined "serious injury" as an injury beyond the capacity of the

individual jails' ability to treat.  Of that number, 45 had to be removed off of the island to outside

hospitals.  The Times' own investigation found several documented instances of force, often after

an inmate had been restrained in handcuffs and often at the hands of several officers who ganged

up upon a single inmate.  The Times investigation concluded, "While it was often hard to know

what precipitated the altercation or who was at fault, the severity of the inmates' injuries makes it

clear that Rikers guards regularly failed to meet basic professional standards."  The results of the

New York Times investigation and the Department of Health and Mental Hygiene report led to an

investigation by the New York City Department of Investigation, which is currently pending.

43.     The United States Attorney's Office for the Southern District of New York

recently undertook an investigation of the treatment of adolescents on Rikers Island (*See* Rikers

Report annexed hereto as Exhibit "B").  That report concluded that "there is a pattern and practice

of conduct at Rikers that violates the constitutional rights of adolescent inmates . . . including

serious physical harm from the rampant use of unnecessary and excessive force by DOC

(Department of Correction) staff."  While the report focused on 16 to 18 year old adolescents, it

explicitly noted, "Our focus on adolescent population should not be interpreted as an exoneration

of DOC practices in the jails housing adult inmates.  Indeed, while we did not specifically

investigate the use of force against the adult inmate population, our investigation suggests that the

systematic deficiencies in this report may exist in equal measure at other jails on

Rikers."

44.     It was the policy and/or custom of defendant CITY to fail to take steps to

discipline, train, supervise or otherwise correct the improper, illegal conduct of the individual

defendants in this and in similar cases involving misconduct, thereby failing to adequately

discourage further constitutional violations on the part of its correction officers.  Defendant

City did not require appropriate in-service training or re-training of officers who were

known to have engaged in such misconduct.

45.     As a result of the above described policies and/or customs, corrections officers

of defendant CITY believed that their actions would not be properly monitored by

supervisory officers and that misconduct would not be investigated or sanctioned, but,

instead, would be tolerated and even encouraged.

46.     The above policies and/or customs demonstrated a deliberate indifference on the

part of policymakers of defendant CITY to the constitutional rights of persons within CITY who

were detained or in the custody of the New York City Department of Corrections, and were the

cause of violations of plaintiff's rights alleged herein.

47.     As a result of the wrongful, deliberately indifferent and illegal acts of defendant

CITY, plaintiff claims damages against defendant CITY for the injuries set forth above.

**COUNT THREE (Federal cause of action pursuant to 42 U.S.C. §§ 1981,
1983, 1985 against the individual defendants for violation of plaintiff's First
Amendment rights)**

48.     Paragraphs 1 through 47 are each repeated, realleged, and reiterated as if fully

set forth herein and are incorporated by reference.

49.     The actions of defendants JOHN DOE ONE, JOHN DOE TWO, and JOHN DOE

THREE violated plaintiff's rights under the First Amendment to the United States Constitution to

engage in protective speech, specifically to make complaints about his treatment while in the

custody of the New York City Department of Corrections and to make complaints concerning

individual correction officers without fear of adverse reaction or reprisal.

50.     The individual defendants' actions and omissions were in part due to retaliate from

plaintiff's previous complaints and lawsuits and were of such a nature and degree as to deter a

person from exercising his First Amendment rights.

51.     As a direct and proximate result thereof, plaintiff claims damages for the injuries

set forth above.

**COUNT FOUR (Cause of action for assault against the individual defendants, JOHN DOE ONE and JOHN DOE TWO)**

52.     Paragraphs 1 through 51 are each repeated, realleged, and reiterated as if fully

set forth herein and are incorporated by reference.

53.     Upon threatening to kill plaintiff, sticking a pistol in his mouth, striking him with

fists and a metal baton, tightening plaintiff's handcuffs, and of inserting the baton into plaintiff's

rectum, defendants JOHN DOE ONE and JOHN DOE TWO, while acting in concert,

intentionally made plaintiff fear for his physical well-being and safety and placed him in

apprehension of immediate harmful and/or offensive touching.

54.     As a direct and proximate result thereof, plaintiff claims damages for the injuries

set forth above.

**COUNT FIVE (Cause of action for battery against the individual defendants, JOHN DOE ONE and JOHN DOE TWO)**

55.     Paragraphs 1 through 54 are each repeated, realleged, and reiterated as if fully

set forth herein and are incorporated by reference.

56.     Upon tying plaintiff's right arm to the bed rail, striking plaintiff about the face and

body with fists and batons, placing a gun against plaintiff's mouth, tightening plaintiff's

handcuffs, and inserting a baton into plaintiff's rectum, defendants JOHN DOE ONE and JOHN

DOE TWO, while acting in concert, touched and otherwise laid hands on plaintiff intentionally

subjecting him to harmful and/or offensive conduct.

57.     As a direct and proximate result thereof, plaintiff claims damages for the injuries

set forth above.

**COUNT SIX (Cause of action for intentional infliction of emotional distress against the individual defendants, JOHN DOE ONE and JOHN DOE TWO)**

58.     Paragraphs 1 through 57 are each repeated, realleged, and reiterated as if set

forth fully and are incorporated herein by reference.

59.     Upon threatening plaintiff, striking plaintiff about the face and body with fists and batons, tightening plaintiff's handcuffs, and inserting a baton in plaintiff's rectum, defendants JOHN DOE ONE and JOHN DOE TWO, while acting in concert, intentionally and recklessly conducted themselves toward plaintiff in a manner so shocking and outrageous that it exceeded all reasonable bounds of decency so as to cause severe emotional distress.

60.     As a direct and proximate result thereof, plaintiff claims damages for the injuries set forth above.

**COUNT SEVEN (Cause of action for assault against the individual defendant, JOHN DOE THREE)**

61.     Paragraphs 1 through 60 are each repeated, realleged, and reiterated as if fully set forth herein and are incorporated by reference.

62.     Upon threatening plaintiff, calling him a "rat," and punching plaintiff in the face, defendant JOHN DOE THREE intentionally made plaintiff fear for his physical well-being and safety and placed him in apprehension of immediate harmful and/or offensive touching.

63.     As a direct and proximate result thereof, plaintiff claims damages for the injuries set forth above.

**COUNT EIGHT (Cause of action for battery against the individual defendant, JOHN DOE THREE)**

64.     Paragraphs 1 through 64 are each repeated, realleged, and reiterated as if fully

set forth herein and are incorporated by reference.

65.     Upon punching plaintiff in the face, defendant JOHN DOE THREE touched and

otherwise laid hands on plaintiff intentionally subjecting him to harmful and/or offensive

conduct.

66.     As a direct and proximate result thereof, plaintiff claims damages for the injuries

set forth above.

**COUNT NINE (Cause of action for intentional infliction of emotional distress
against the individual defendants, JOHN DOE THREE)**

67.     Paragraphs 1 through 66 are each repeated, realleged, and reiterated as if fully

set forth herein and are incorporated by reference.

68.     Upon threatening plaintiff and punching plaintiff about the face, defendant JOHN

DOE THREE intentionally and recklessly conducted himself toward plaintiff in a manner so

shocking and outrageous that it exceeded all reasonable bounds of decency so as to cause

emotional distress.

69.     As a direct and proximate result thereof, plaintiff claims damages for the injuries

set forth above.

**COUNT TEN (cause of action against the municipal defendant under the
doctrine of <u>Respondeat Superior</u>)**

70.     Paragraphs 1 through 70 are each repeated, realleged, and reiterated as if fully

set forth herein and are incorporated by reference.

71.     Defendant CITY is liable for all injuries sustained by plaintiff as alleged in this complaint starting on or about July 4, 2014, and continuing thereafter, as a result of the conduct of its agents, servants, and employees, under the doctrine of respondeat superior.

72.     Defendant CITY, by its agents, servants, and employees, committed the torts of intentional infliction of emotional distress, assault and battery.

73.     As a direct and proximate result thereof, plaintiff claims damages for the injuries set forth above.

**WHEREFORE,** plaintiff demands judgment against defendants, jointly and severally, respectively as to each and every cause of action alleged hereninabove for compensatory damages on each count; for punitive damages on each count; awarding plaintiff reasonable attorney's fees, costs, and disbursements of this action; and granting such other and further relief as this court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury

Bronx, New York

This 7th day of November 2014

Getz and Braverman, P.C.

Raymond Gazer, Esq. (RG 3706)
172 East 161 Street
Bronx, New York 10451
(718)993-3000
(718)402-5183